In the Matter of The **HARWALD COM-
PANY**, an Illinois corporation,
Bankrupt.

Appeal of Clyde **ENGLE** et al.
No. 73–1712.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 1974.

Decided May 16, 1974.

William N. Weaver, Jr., and Stephen
M. Merrick, Chicago, Ill., for appellants.

Norman H. Nachman and Allan G.
Sweig, Louis W. Levit, Chicago, Ill., for
appellee.

Before CASTLE, Senior Circuit
Judge, SPRECHER, Circuit Judge, and
SOLOMON,* Senior District Judge.

CASTLE, Senior Circuit Judge.

Appellants Clyde Engle, Roger Weston
and Visual Sciences, Inc. appeal from an
order of the district court dismissing
their petition for review of an order of
a bankruptcy referee confirming the sale
of substantially all of the assets of the
bankrupt Harwald Co. to Research Tech-
nology, Inc. ("RTI"). The appellants
objected to the confirmation of the sale

* Senior District Judge Gus J. Solomon of the District of Oregon is sitting by designation.

on the ground that the completed transaction would be unlawful in that it would permit RTI to acquire monopoly power in the market of high speed automatic equipment for testing and cleaning sixteen millimter film, in violation of § 2 of the Sherman Act (15 U.S.C. § 2) and § 7 of the Clayton Act (15 U.S.C. § 18). The district court held that the appellants, as unsuccessful bidders for the assets of Harwald, lacked standing to seek review of the referee's order confirming the bankruptcy sale, because they are not "person[s] aggrieved by an order of a referee" under § 39(c) of the Bankruptcy Act, 11 U.S.C. § 67 and because the appellants' specific objection was an insufficient basis for denying confirmation of the sale. We affirm the dismissal.

The district court, in holding that the appellants lacked standing under the bankruptcy statute to petition for review of the referee's order confirming the sale of Harwald's assets because they were unsuccessful bidders, relied principally on In Re Realty Foundation, Inc., 75 F.2d 286 (2d Cir. 1935), which was cited with approval in Imperial Bowl of Miami, Inc. v. Roemelmeyer, 368 F.2d 323 (5th Cir. 1966). In the former case, an unsuccessful bidder sought review of the confirmation of a bankruptcy sale on the ground that the referee had altered the terms of the sale from the description provided in the notice of sale with the result that a lesser bid was accepted. The court held that an unsuccessful bidder not a creditor to whom notice had been sent lacked the necessary legal interest to challenge the sale. The theory of standing adopted by the Second Circuit was articulated by the Supreme Court in Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939), in which the Court denied standing to the plaintiffs because the right invaded was not "a legal right— one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege." Id. at 137–

138. However, in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970), the Court recognized that the " 'legal interest' test goes to the merits. The question of standing is different. It concerns . . . the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute. . . ." Id. at 153. Additionally, the plaintiff must establish that the challenged action has caused him injury in fact. Id. at 152.

Thus, to establish standing as a "person aggrieved" under § 39(c) of the Bankruptcy Act, it is necessary for the plaintiff to show that the challenged sale caused him injury in fact as well as that the interest which he seeks to protect through his petition for review is an interest which the Bankruptcy Act seeks to protect or regulate. Clearly, the primary objective of the Bankruptcy Act is to minimize the injury to creditors arising from the fact of bankruptcy. See, Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). To realize this objective, the Act provides, "Real and personal property shall, when practical, be sold subject to the approval of the court." 11 U.S.C. § 110(f). Implicit in the realization of the primary purpose is the presumption that sale by public auction, where all interested parties can be brought together for open, competitive bidding, will result in the highest prices which could be obtained on behalf of the creditors for the bankrupt's property. Cf., Shlensky v. H. R. Weissberg Corp., 410 F.2d 1182 (7th Cir. 1969). Courts therefore properly entertain suits challenging the equity of a bankruptcy sale transaction, on the assumption that sales tinged by fraud, mistake or unfairness would generally result in an accepted bid below that which might have been expected in a fair, free market situation. See, Collier on Bankruptcy (14th ed. 1971). Thus, when an unsuccessful bidder attacks a

bankruptcy sale on equitable grounds related to the intrinsic structure of the sale, he brings himself within the zone of interests which the Bankruptcy Act seeks to protect and to regulate. *See,* Mason v. Ashback, 383 F.2d 779 (10th Cir. 1967); In Re Time Sales Finance Corp., 445 F.2d 385 (3rd Cir. 1971) (by implication).

 However, the equitable power of the bankruptcy court may only be exercised within the limits of the jurisdiction established by the Bankruptcy Act. Knox v. Lines, 463 F.2d 561, 563 (9th Cir. 1972). The powers conferred on bankruptcy courts by the Bankruptcy Act do not make them courts of general jurisdiction to hear and determine controversies not properly part of bankruptcy proceedings. In Re Love B. Woods & Co., 222 F.Supp. 161 (S.D.N.Y.1963). The jurisdictional limit of the inquiry of the bankruptcy court was reached when the appellants acknowledged that the sale of Harwald's assets was conducted in all respects in full and *complete compliance with all require-ments of the law.* In Re Harwald Co., No. 73 B 954 (N.D.Ill.1973) at 3. A determination by the bankruptcy court of whether sale of a bankrupt's assets to a prospective purchaser would, because of the purchaser's special characteristics, violate antitrust laws could not, contrary to the appellants' contention, properly be considered part of the bankruptcy proceedings. 11 U.S.C. § 11. There are sound reasons for this result. First, the creditors might be deprived of receiving the highest obtainable price for the sale of the bankrupt's assets at a fully competitive public sale. Second, delay of confirmation of the sale pending a judicial determination of the qualifications of the prospective buyer with respect to antitrust law would not only deny the creditors the present use of proceeds from the sale but would also diminish the amount of proceeds through continuing expenses of the bankruptcy trustee. It is the prospective purchaser, not the creditors, who is best able to assess the legal implications of his special characteris-

tics and who should properly bear the risk of any possible peril attaching to him because of a purchase at a valid bankruptcy sale. *See,* In Re Airlines Transport Carriers, 129 F.Supp. 679 (S. D.Cal.1955). Thus, while it is clear that a valid antitrust claim should be properly adjudicated, it is equally clear that a bankruptcy court is simply not the proper *forum to consider the matter.*

The judgment of the district court is affirmed.

Affirmed.