3 F.3d 148
 RICO Bus.Disp.Guide 8373
 Harry E. FLEISCHHAUER; Louis B. Updegrove; Roger Houston;
Bruce I. Forrester; Kathleen D. Forrester; Robert P. Gill;
Daniel E. Wright; Carol A. Wright; Gordon M. Earle; Ref
Productions, Ltd.; Dennis M. Harrington; Charles Mueller;
C.T. Lee; James Ralph; Natividad M. Aumentado; David
Forrester; Robert Mournighan; Ona L. Mournighan; Joseph
Reisinger; Ken W. Chambers; Charles E. Judd, d/b/a C.E.
Judd & Associates, Plaintiffs-Appellants,
v.
C. Elvin FELTNER, Jr.; Palm Beach Properties, Inc., a/k/a
Palm Beach Films, Inc.; Metropolitan Properties, Inc.,
a/k/a Metropolitan Films, Inc.; Robert J. Levine; C.E.
Feltner, Jr., d/b/a Fleischhauer, et al. v. Feltner, et al.
Metropolitan Films, Inc., Defendants-Appellees.
 Nos. 92-3337, 92-3461 and 92-3775.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 10, 1993.
Decided Aug. 20, 1993.
 
 Jim Rimedio (briefed), F. Harrison Green, Roger C. Stridsberg (argued & briefed), Cincinnati, OH, for plaintiffs-appellants.
 Roger W. Healey (argued & briefed), Buechner, Haffer, O'Connell & Meyers, Richard Boydston, Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH, for defendants-appellees.
 Robert J. Levine, pro se.
 Before: KEITH and RYAN, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 This case has been before this court on a prior occasion. See Fleischhauer v. Feltner, 879 F.2d 1290 (6th Cir.1989) (in which we filed a supplemental opinion), cert. denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990). This case is now before us on appeal from an award of attorney fees to the plaintiffs in this RICO action. For the following reasons, we AFFIRM the district court's award of attorney's fees.
 
 
 2
 Four different district judges have been involved in this case since June of 1984. The original trial was set to take place before Judge Herman Weber in April of 1986, but the defendants moved to change attorneys on the day of trial, and to continue the trial.[1] Once the trial took place, with Judge Carl Rubin now presiding, the jury awarded the plaintiffs a sizable verdict. The plaintiffs filed an application for attorney fees and costs which was amended to comply with the district court's requirements.[2] The district court waited to act on this application pending the outcome of the first appeal on the merits. Once this court decided the questions before it on appeal, the district court then awaited the outcome of the petitions for certiorari which were denied in February and March of 1990. See Feltner v. Fleischhauer, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990); 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990). The plaintiffs then filed a motion for extension of time to file their supplemental application for fees and the district court granted their motion extending the time until May 17, 1990. The plaintiffs did not file a supplemental fee request within the allotted time.[3]
 
 
 3
 Eventually, the defendants requested an evidentiary hearing on the applications for attorney fees and costs, but the district court denied their request. Instead, the district court held a conference on December 19, 1991, at which time all parties explained that an evidentiary hearing was unnecessary to settle the remanded issues. Consequently, the amount of attorney fees was the only remaining controversy before the court. The court advised all parties at this conference that "it would render a decision on Plaintiff's fee application based upon the documents of record as of February 1, 1992."[4]
 
 
 4
 The plaintiffs filed a supplemental fee application on February 3, 1992. The defendants filed a motion to strike that application as untimely. The district court entered an order refusing to review the supplemental fee application explaining:
 
 
 5
 Not only did Plaintiffs fail to supplement their fee request within that permitted extension, but they failed even to suggest at the December 19, 1991 conference that they intended to request additional fees. Moreover, they failed to file their supplemental request by the firm February 1, 1992 deadline set by the Court and agreed to by the parties at the conference. They further neither requested an extension of time beyond that deadline, nor offered any justification for the untimeliness of their filing.
 
 
 6
 The district court concluded: "[i]n light of Plaintiffs' flagrant disregard of the February 1, 1992 deadline set by the Court, Defendants' motion to strike is well taken." The court denied the plaintiffs' supplemental fee application but awarded plaintiffs fees from previous applications.
 
 
 7
 In the plaintiffs' 1987 fee request, the plaintiffs sought fees for attorney F. Harrison Green's claimed 897 hours of work between 1983 and 1984. Green was suspended by the Ohio Supreme Court from the practice of law on July 21, 1982 and was not reinstated until January 6, 1988, during which time Green was ineligible to practice law in the state of Ohio. The plaintiffs did not deny that Green was not licensed to practice law. Instead, they argued that the district court did not suspend him until August 5, 1988, and that he was therefore entitled to compensation for his services in that court. In denying this request, the court stated:
 
 
 8
 Plaintiffs ask this Court to compensate Mr. Green for concealing his suspension by awarding him the $224,250 in "fees" he now requests, as payment for a time when he would not have been permitted to practice in this Court had he revealed the status of his licensure in this state.
 
 
 9
 This Court is not inclined to so reward Mr. Green's deceit.[5]
 
 
 10
 In our consideration of the issues on the merits, we overturned the damages award against one of the defendants which amounted to one-eighth of the total damages assessed. The district court, acknowledging that the amount of damages does not necessarily indicate the degree of success obtained, decided that the damages were a "reasonable indicator of the relative extent to which Plaintiffs' efforts were directed toward each Defendant." Finding no other reliable indicator, the district court reduced the hours listed in the fee application by one-eighth to account for this court's reversal of damages as to one defendant. The district court, however, did not reduce the award for the unsuccessful Ohio fraud claim because the RICO claim dominated the action.
 
 
 11
 The district court noted the 1983 local hourly rate study, which the trial instructions directed would be used, and its recommendation that an intermediate partner would be paid $113.43 and a senior partner, $128.34. Despite this study, plaintiffs ask to be reimbursed at a rate of $250.00 an hour. Moreover, one of plaintiffs' attorneys admitted to the court that his actual hourly rate was $100. The court found that the plaintiffs' attorneys did not achieve "exceptional success" to justify an enhanced fee award. In light of all these factors, the court determined that the two attorneys involved would be allowed $150 an hour.
 
 
 12
 As footnoted earlier, Judge Weber, one of the judges who handled this matter prior to Judge Rubin, awarded the plaintiffs' attorneys $30,000 in fees when the defendants moved to continue the case on the day of trial. While the plaintiffs claimed those costs were not requested in their fee application in 1987, they admitted: "Defendants are correct, the plaintiffs, by oversight, did not credit the defendants' $30,000 payment." The district court held, therefore, that defendants were entitled to a $30,000 credit on the fees allowed.
 
 
 13
 I. FEBRUARY 3RD SUPPLEMENTAL FEE APPLICATION
 
 
 14
 Plaintiffs argue that the district court did not follow local or federal rules and thus, the February 3rd supplemental application should have been considered. The plaintiffs also argue that the district court improperly computed the time ignoring Fed.R.Civ.Proc. Rule 6(a)[6]. Judge Rubin set out at the conference that he would make a decision after reviewing all documents filed by February 1, 1991.
 
 
 15
 Computation under Rule 6(a), by its very nature, is only necessary when a court orders something to be done in a particular number of days. Judge Rubin's order did not require the plaintiffs to file something within ten days, for example, but rather required the plaintiffs to file all documents the court was to consider by February 1. We construe this to mean that February 1 was a final deadline. Because February 1 fell on a Saturday does not invalidate the judge's order, nor did it extend the time by reason of local court or federal rules to February 3.
 
 
 16
 In the alternative, the plaintiffs argue that the district court did not follow the local rule because the district court did not require the application to be filed within thirty days of the entry of the judgment. Local rule 5.9, adopted by the Ohio district courts on November 17, 1988, explains
 
 
 17
 Except as otherwise provided by statute or by Order of the Court, an application for attorney fees by a prevailing party together with a supporting memorandum shall be filed within (30) days after the entry of judgment. This requirement shall not be affected by filing of a notice of appeal. Failure to file the application within time specified shall be considered a waiver of the right to attorneys fees, unless for good cause shown the Court extends the time for filing the application.
 
 
 18
 The first sentence of the rule permits the court to order otherwise. The court in this matter was acting within its discretion, and thus we AFFIRM the district court's striking of the untimely supplemental fee application.
 
 II. THE AMOUNT OF ATTORNEY FEES
 
 19
 The Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), explained that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433, 103 S.Ct. at 1939. The Court suggested that the district court must focus on the degree of reducing the amount of the award to account for limited success or for time spent on unsuccessful claims.[7] The Court emphasized that the district court has the discretion to reduce the award. "This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Id. at 437, 103 S.Ct. at 1941.
 
 
 20
 The Supreme Court elaborated further in Pennsylvania v. Delaware Valley Citizens' Council, 483 U.S. 711, 725, 107 S.Ct. 3078, 3086, 97 L.Ed.2d 585 (1987), where the Court was "unconvinced that Congress intended the risk of losing a lawsuit to be an independent basis for increasing the amount of any otherwise reasonable fee for the time and effort expended in prevailing." Thus, the Court concluded that any enhancement for risky cases is unnecessary under the reasonable lodestar formula because the legal skills and the experience of the attorney, as well as the novelty of the question, will be reflected in the number of hours and the hourly rate. The Court concluded it might be duplicative to increase the fee unless the case is an "exceptional case" where such fee is warranted by the evidence in the record. Id. at 728, 107 S.Ct. at 3088. This court reviews the district court's fee determination for an abuse of discretion. Finding none, we AFFIRM on this issue also.
 
 A. Green's Hours
 
 21
 The district court refused to reimburse the plaintiffs for Green's hours due to his "deceit." Because Green failed to inform the district court that he had been disbarred, the district court determined that Green should not be paid for any of his hours. The district court explained further that even if the court considered reimbursing Green for his hours, his claim was exorbitant. Green billed over 800 hours to the plaintiffs between 1983 and 1984.
 
 
 22
 Local Rule 2.6 (now Rule 83.4) requires that local attorneys comply with Federal Rule Disciplinary Enforcement II which, in turn, requires the attorney to inform the clerk of the court about his disbarment. The ability to practice in federal courts derives from the license obtained in a state court, and since Green had no license and did not follow the local rules, the district court did not abuse its discretion. See Berger v. Cuyahoga Bar Assoc., 983 F.2d 718 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).
 
 B. The Hourly Rate Dispute
 
 23
 The plaintiffs complain of the $150 hourly rate applied to the remaining hours in the fee application. Essentially, they argue that since Judge Weber awarded $250 an hour, then so should Judge Rubin. Judge Weber's order does not specify an hourly rate, but enumerated the exact amount to be paid. Judge Rubin, after reviewing the 1983 local study, increased the hourly rate to account for inflation. Moreover, he awarded both attorneys the same hourly rate despite the fact that an intermediate partner's average hourly rate was only approximately $113 and the senior partner's rate was approximately $125. The court awarded both attorneys $150 an hour. We find no abuse of discretion in this decision.
 
 C. Reduction for Unsuccessful Claims
 
 24
 After this court reversed the verdict as to one of the defendants, the district court reduced the fee award one-eighth since that was the proportionate share of the damages for that defendant. The district court, however, did not reduce the award for the unsuccessful Ohio fraud claim because it determined that RICO claims dominated the suit. The district court has, within its discretion, the power to determine the reasonable attorney fees owing to qualified litigants. That power includes the discretion to reduce the amount of a fee award based on unsuccessful claims. Judge Rubin tried this case and was in a much better position than this court to determine the fee award. We also find no abuse of discretion in this determination.
 
 
 25
 We, accordingly, AFFIRM the district court's award of attorney fees in its entirety.
 
 
 
 [1]
 Judge Weber awarded the plaintiffs $30,000 in fees and costs at this juncture
 
 
 [2]
 When Judge Rubin took this case over, he issued a list of trial instructions, including the manner in which the fee applications should be handled. The plaintiffs had to amend the application in accordance with his instructions
 
 
 [3]
 The plaintiffs claim that no supplemental applications were filed because the parties were in settlement negotiations. The district court set a jury trial to be held on April 22, 1991, to decide the questions presented by this court on remand but that trial was held in abeyance. According to the plaintiffs, an agreement was reached in March and amended in July of 1991, but the defendants breached the settlement agreement
 
 
 [4]
 February 1 fell on a Saturday
 
 
 [5]
 The district court also explained that the number of hours were "beyond excessive." Mr. Green billed 70 hours for drafting the complaint and 29 hours for reviewing the complaint with the plaintiffs. Twenty-eight hours were billed for attending a seminar on RICO in New York, plus 20 hours for reading the materials from the seminar. "While these are among the more glaring instances, Plaintiffs' fee application is fraught with other examples of overreaching by Mr. Green." Thus, the court admonished counsel that statutory fee provisions were "not to be construed as a license to abandon billing judgment."
 
 
 [6]
 The rule applies when, "[I]n computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court,...." Fed.R.Civ.Proc. Rule 6(a). The rule further explains that Saturday and Sundays will not be counted nor will certain listed holidays
 
 
 [7]
 Partial success on behalf of the plaintiff may overcompensate the plaintiff's attorney even "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."