NOT FOR PUBLICATION
File Name: 08a0361n.06
Filed: June 23, 2008

NOs. 06-4292; 06-4508; 06-4599

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

In re: PERCY SQUIRE

           Debtor,

_____

PERCY SQUIRE;
PERCY SQUIRE CO., LLC,

           Appellants,

v.

CRO BRADLEY E. SCHER,
Ocean Ridge Capital Advisors, LLC;
D. B. ZWIRN SPECIAL OPPORTUNITIES
FUND; RICHARD D. NELSON, Trustee,

           Appellees.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE:    GUY, SUHRHEINRICH and GIBBONS, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.** This is a consolidated appeal from three orders of the district court, each of which granted Trustee Richard D. Nelson's ("Trustee") motion for substitution of the Chapter 7 trustee for Appellant Percy Squire ("Squire") and voluntary dismissal of appeal. Appellants are Squire and his law firm, Percy Squire Co., LLC ("PSC") (collectively "Appellants"). Appellees are the Trustee and D.B. Zwirn Special Opportunities Fund, LP ("DBZ").[1]

**I. Background**

_____

[1] DBZ joined the Trustee's brief pursuant to Fed. R. App. P. 28(i), and adopts by reference the Trustee's brief in its entirety.

All of the corporate debtors operated radio stations in Columbus and Youngstown, Ohio. The corporate debtors include Stop 26 Riverbend, Inc. ("SRI"), Esq. Communications, Inc. ("ESQ"), Campbell Radio Co., LLC ("CRC"), and Stop 26 Riverbend Licenses, LLC ("SRL") (collectively "Debtors"). SRI owns, either directly or indirectly, each of the corporations. Appellant Percy Squire is a shareholder of SRI.

In February of 2004, Squire caused the Debtors to borrow approximately $12 million from DBZ. The loan was secured by substantially all of the Debtors' assets and was personally guaranteed by Squire. On July 1, 2005, Squire filed a Chapter 11 bankruptcy petition for himself. On July 12, 2005, Squire caused the filing of Chapter 11 bankruptcy petitions for Debtors. On July 14, 2005, DBZ moved for appointment of a trustee. The parties resolved the motion by stipulation, which resulted in an order appointing a Chief Restructuring Officer ("CRO") and granting the CRO complete financial control of the Debtors ("CRO Order"). The CRO Order also allowed Squire to remain responsible for the operation and refinancing of the Debtors until December 1, 2005, and further provided that Squire would relinquish control if he failed to comply with those terms by that date. Squire failed to comply with the CRO Order, and the CRO assumed responsibility for Squire's functions on December 1, 2005. The CRO sought and received an assignment of the broadcast licenses to the debtor-in-possession and involuntary pro forma transfer of control of the broadcast licenses from the shareholders to the CRO.

On January 4, 2006, the bankruptcy court entered an order approving certain bid procedures and fixing the date, manner, and notice of an auction and hearing for sale of the Debtors' assets ("Bid Order"). The Bid Order required all interested parties to submit bids for the assets on or before 5:00 p.m. on January 16, 2006. The Bid Order also specified that "qualified bids" must be in the form

of a bill of sale and accompanied by "written evidence of available cash or a commitment for financing" in an amount sufficient to cover the proposed purchase. DBZ tendered the only timely bid.

On January 17, 2006, PSC submitted a letter stating that it wished to submit a bid. The CRO notified PSC that it was not a qualified bidder, because the letter was not in the form of a bill of sale and it was not accompanied by written evidence of available cash or commitment for financing as required by ¶¶ c(iii) and d(ii) of the bid procedures outlined in the Bid Order.

On January 19, 2006, the Debtors's assets were auctioned. DBZ, which had a credit bid of $12 million on account of its allowed secured claim, was declared the winning bidder. The sale of the Debtors' assets to DBZ was approved by the court ("Sale Order"). The Sale Order authorized the transfer of the assets free and clear of liens, claims, and encumbrances, subject to approval by the Federal Communications Commission ("FCC"). It contemplated a two-step closing: the first involving the transfer of non-FCC regulated assets to DBZ (or its designee), and the second involving the transfer of FCC-regulated assets upon FCC approval.

On May 7, 2006, Squire and PSC appealed the bankruptcy court's Bid Order and Sale Order to the district court. On May 8, 2006, the bankruptcy court converted the Debtors' Chapter 11 proceeding to a proceeding under Chapter 7 of the Bankruptcy Code. On May 9, 2006, Nelson was appointed Chapter 7 Trustee in Squire's bankruptcy case.

Squire filed the remaining appeals from other orders entered by the bankruptcy court.

On June 6, 2006, the Trustee filed a motion for substitution of Chapter 7 Trustee for Appellant Squire and for voluntary dismissal of appeal by Appellants in the appeal relating to the Sale Order.

On August 18, 2006, the district court dismissed Squire's and PSC's appeal of the Sale Order. The district court determined that PSC lacked standing, that the Trustee should be substituted as Appellant for Percy Squire, and that the Trustee's motion to voluntarily dismiss the appeal should be granted. The court subsequently granted the Trustee's motion for substitution and voluntary dismissal in each of the other appeals filed by Squire.

These appeals followed.[2]

## II. Analysis

### A. Standing

Appellants first challenge the district court's conclusion that the Trustee was properly substituted for Squire as Appellant and its holding that PSC lacked standing to appeal the bankruptcy's sale order to the district court.

As Appellants acknowledge, Squire filed four of the appeals from the bankruptcy court orders *after* the Trustee was appointed. At this stage, however, only the Trustee has the capacity to represent the estate and to sue and be sued under 11 U.S.C. § 323. *See* 11 U.S.C. 323; *In re Stinson*, 221 B.R. 726, 731 (Bankr. E.D. Mich. 1998). Squire therefore lacked standing to file an appeal.

As for the appeals filed before the Trustee was appointed, standing transferred to the Trustee upon his appointment. *See In re Stinson*, 221 B.R. at 731. To get around this, Appellants argue that

---

[2]The district court orders arose from seven separate appeals Appellants filed from various bankruptcy court orders. This consolidated appeal is from three of those orders. The appeal of the Sale Order was designated District Court Case No. 1:06-CV-112. Squire also appealed the Bankruptcy Court's Order denying the request of one of the corporate debtors to file a bankruptcy petition on behalf of another entity, Associated Radio, Inc., which was wholly owned by one of the corporate debtors. This appeal was designated District Court Case No. 1:06-CV-244. Squire also filed five additional appeals from bankruptcy court orders that were consolidated by the district court under Case No. 1:05-CV-267, *et seq.* and ultimately dismissed in a single order by the district court.

the Trustee's voluntary dismissal of Squire and PSC's appeal constituted a constructive abandonment of the claims underlying the appeal, such that they reverted back to Appellants to pursue. Appellants offer no authority for this novel position, however, and the record does not support such a claim. Abandonment requires affirmative action or some evidence of intent to abandon the asset by the trustee. *Stein v. United Artists Corp.* (*In re Stein*), 691 F.2d 885, 890-91 (9th Cir. 1982). The mere fact that the Trustee moved to dismiss Appellants' appeal, which would have delayed the orderly administration and liquidation of the estate, does not support a theory of constructive abandonment. *See In re First Cincinnati, Inc.*, 286 B.R. 49, 51 (6th Cir. BAP 2002) (stating that the "rule of appellate standing is necessary to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation that does not serve the interests of either the bankrupt's estate or its creditors"). Furthermore, neither the Trustee nor Appellants moved to abandon property as required by Bankruptcy Rule 6007. *See* Fed. R. Bankr. P. 6007(a) (providing that a trustee "shall give notice of a proposed abandonment . . . to . . . all creditors"); *id.* 6007(b) (stating that "[a] party in interest may file and serve a motion requiring the trustee . . . to abandon property of the estate").

In addition, none of the exceptions conferring standing upon a debtor independent of the Trustee apply here for the reasons discussed by the district court in its amended order dated September 12, 2006. In short, the district court correctly concluded that the doctrine of abandonment did not apply and properly substituted the Trustee for Squire as Appellant.

PSC likewise lacked standing to appeal the bankruptcy court's orders. Frustrated bidders do not have standing to object to the sale of property. *In re Planned Sys., Inc.*, 82 B.R. 919, 922 (Bankr. S.D. Ohio 1988). Although an exception exists where an unsuccessful bidder challenges the intrinsic structure of the sale because it is tainted by fraud, mistake, or unfairness, *see Dick's Clothing &*

*Sports Goods*, *Inc. v. Phar-Mor, Inc.*, 212 BR 283, 288-89 (N.D. Ohio 1997); *Kabro Assocs. of West ISLP, LLC, v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 274 (2d Cir. 1997), PSC did not allege or offer any evidence of intrinsic unfairness. PSC merely objected to the bid process as a disappointed bidder seeking a new auction. PSC is thus not within the "zone of interests" to be protected by the Bankruptcy Code and applicable law. *See Phar-Mor*, 212 BR at 289; *In re Harwald Co.*, 497 F.2d 443, 444-45 (7th Cir. 1974). In addition, as the district court held, because PSC was a potential purchaser, it lacked any interest in the property.

PSC also failed to establish that it was aggrieved by the Bid or Sale Order because PSC was not "directly and adversely affected pecuniarily by the order." *See In re First Cincinnati, Inc.*, 286 B.R. at 51. PSC lacked standing because it did not establish that the Sale Order diminished its property, increased its burden or impaired its rights. *Id.; see also Harker v. Troutman (In re Troutman Entreprs.)*, 286 F.3d 359, 364 (6th Cir. 2002) (same). Further, as the district court found, PSC's letter stating that it wished to submit a bid did not meet the criteria for a "qualified bid" pursuant to the terms of the Bid Order, PSC was not a qualified bidder. Thus, PSC has no basis, let alone standing, to challenge the structure of the bid procedures. In sum, the district court correctly held that PSC lacked standing to pursue the appeal.

Because Appellants lacked standing, we lack jurisdiction over their remaining claims. *See Troutman*, 286 F.3d at 364 (stating that standing is a jurisdictional requirement).

## B. Merits

Even if we had jurisdiction, Appellants' remaining claims lack merit. First, Appellants argue that the 5:00 p.m. January 16, 2006 bidding deadline, violated Rule 9006 because it fell on a holiday, and they should have had until 5:00 p.m. the following day to submit their bid. The flaw in this

argument is that Fed. R. Civ. P. 6(a) "applies only to situations where parties must compute deadlines based on the passage of a fixed number of days and therefore, the Rule does not apply to situations where the court has established a specific calendar day as the deadline." *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1016 (6th Cir. 2005). *See also Fleischhauer v. Feltner*, 3 F.3d 148, 151 (6th Cir. 1993). In *Violette,* this Court intimated that this construction would apply to Bankr. Rule 9006. *Id.* at 1019, and we adopt that suggestion here.

Appellants' claim that the Federal Communications Act was violated also fails. The Sale Order expressly segregated FCC regulated assets from non-FCC-regulated assets, and further incorporated and anticipated the need for FCC approval into that order.

### III. Conclusion

The judgment of the district court is **AFFIRMED.**