RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re:  ROBERT J. MORAN,

　　　　　　　　　　　　*Debtor.*

_____

W. THOMAS STARK,

　　　　　　　　　　　　*Plaintiff-Appellant,*

　　　　*v.*

ROBERT JOHN MORAN; MARVIN A.
SICHERMAN,

　　　　　　　　　　　　*Defendants-Appellees.*

No. 08-3606

On Appeal from the Bankruptcy Appellate Panel
of the Sixth Circuit.
No. 01-21926—Randolph Baxter, Bankruptcy Judge.

Argued:  March 10, 2009

Decided and Filed:  May 28, 2009

Before:  BOGGS, Chief Judge; GILMAN and ROGERS, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:**  Joseph Robert Spoonster III, FORTNEY & KLINGSHIRN, Akron, Ohio, for
Appellant.  Lynn R. Larsen, LAW OFFICE OF TIMOTHY FARRELL SWEENEY,
Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Joseph Robert Spoonster III, FORTNEY &
KLINGSHIRN, Akron, Ohio, for Appellant.  Lynn R. Larsen, Timothy F. Sweeney, LAW
OFFICE OF TIMOTHY FARRELL SWEENEY, Cleveland, Ohio, Marvin A. Sicherman,
DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellees.

_____

## OPINION

_____

　　　ROGERS, Circuit Judge.  Shares owned by a bankrupt party amounting to a one-
third interest in a closely held corporation—shares that the debtor had not originally listed

1

in the bankruptcy petition—subsequently increased in value. The debtor and the bankruptcy trustee agreed that if the debtor paid to the bankruptcy estate an amount sufficient to cover all the bankrupt's debts for which creditors had filed proofs of claim, the trustee would seek bankruptcy court approval to treat the stock as "abandoned" nunc pro tunc to the time of bankruptcy filing, thereby leaving the stock in the hands of the debtor. The bankruptcy court approved the arrangement and the nunc pro tunc abandonment in a decision affirmed by the Bankruptcy Appellate Panel. The owner of the remaining shares of the corporation—who sought to buy the debtor's stock from the trustee—appeals, contending among other things that the deal did not comply with the statutory requirements for abandonment in 11 U.S.C. § 554. The appellant co-owner, however, lacks a legally protected interest in his ability to purchase the debtor's interest in the property, and therefore lacks bankruptcy appellate standing. The legal bases for the co-owner's challenges to the settlement and abandonment serve to protect the estate and its creditors, not those who want to purchase the property in question.

Debtor Robert Moran, his brother-in-law Tom Stark, and John Gerrish founded Airpack, Inc. in 1996 as equal partners and co-owners. Each paid $12,000 in initial capitalization and received one-third of the shares of the corporation.

Moran filed for bankruptcy in Ohio in December 2001, seeking the discharge of about $140,000 of debt held by creditors with unsecured nonpriority claims. He claimed no interest in any stock or business association, despite his one-third interest in Airpack. Marvin Sicherman, trustee of the bankruptcy estate, filed a "No Asset Report" in January 2002. The bankruptcy court subsequently approved a discharge and closed the case. It appears that no creditors received any funds from the estate at that time. The parties dispute whether the Airpack stock had any significant value at the time of the discharge, but all agree that the stock had considerable value by 2006.

In July 2005, Moran filed suit against Stark in Ohio court. Moran alleged that after he and Stark agreed to buy out Gerrish, Stark secretly arranged to buy out Gerrish himself, then wrongfully used Stark's new majority-shareholder status to freeze out Moran. Moran's complaint contained counts of breach of contract, breach of fiduciary duties, fraud, and violation of state corporate law. Moran's success on these claims may depend on his

ownership of the Airpack stock—if the bankruptcy estate owned the stock at the time of Stark's alleged wrongful conduct, some or all of the counts in Moran's suit might fail to state a valid claim.[1]

In March 2006, the trustee moved to reopen the bankruptcy case because of the undisclosed Airpack stock, which he characterized as "clearly property of the Debtor's bankruptcy estate." *See* 11 U.S.C. § 541(a)(1); *see also id.* § 554(c) (property reported by debtor abandoned to him at close of case); *id.* § 554(d) (property not reported by debtor and not administered remains property of the estate). The bankruptcy court reopened the case, and the trustee sent notice to creditors inviting them to file proofs of claim. Creditors filed about $20,000 worth of proofs of claim.[2]

Stark submitted an offer to the trustee to purchase the Airpack stock from the estate for $20,000. But the trustee chose to deal with Moran instead. The trustee evidently reasoned that so long as the estate received enough money to pay off all creditors' claims (and the trustee's fees), the estate would not care who ended up with the stock, and Moran was willing to contribute sufficient money to that end. Indeed, bankruptcy law contemplates the return of leftover assets to the debtor at the close of a case. *See* 11 U.S.C. § 554(c).

In January 2007, the trustee filed a motion with the bankruptcy court styled "Motion . . . For Authority to Compromise the Bankruptcy Estate's Claim to the Debtor's Equitable Interest in Airpack, Inc., and to Abandon Any Remaining Interest in Airpack, Inc." The trustee stated that he likely would have abandoned the stock in 2002 had Moran properly reported it. However, the trustee claimed that he thought the estate "should be entitled to at least a portion" of the appreciation in the stock's value, while Moran was claiming entitlement to the stock's entire value. The trustee characterized the disagreement as a "disputed claim" and suggested a settlement. The terms of this

---

[1] Stark and Moran argue based on this assumption; we express no opinion about the legal merits of Moran's complaint under Ohio law.

[2] The record does not reflect why the amount of submitted claims is significantly lower than the amount of the debts Moran sought to discharge.

settlement were that Moran would pay about $32,500 to the estate (enough to pay all creditors who had filed proofs of claim after the bankruptcy court reopened the case as well as all administrative expenses), while the trustee would abandon any claim to the Airpack stock. The parties asked the court to make the abandonment nunc pro tunc to the filing of the bankruptcy petition.

Stark filed objections to the trustee's motion. He also submitted another offer to purchase the Airpack stock from the estate, this time for $30,000. In the letter making that offer, Stark claimed that he would have made an offer to purchase the stock had the trustee sought to abandon it after Moran first filed the bankruptcy case. Stark later increased his offer to $37,500.

No creditors objected to the trustee's motion. The bankruptcy court granted the motion, characterizing the transaction as a "settlement" or "compromise." The bankruptcy court also allowed the estate to "abandon" the stock nunc pro tunc to the bankruptcy petition filing date. The bankruptcy court held that Stark as a higher bidder did not have standing to object to a compromise or an abandonment because neither was a judicial sale. The court also noted that even if Stark were allowed to pay a higher purchase price for the stock, the surplus would merely return to Moran after the estate paid the creditors.

On appeal, the Bankruptcy Appellate Panel affirmed the bankruptcy court's judgment. The BAP held that Stark "arguably" had appellate standing under the "person aggrieved" standard. However, the BAP held that Stark lacked standing before the bankruptcy court because he had no legally protected interest in Moran's stock. The BAP also held that the trustee's proposed transaction was a settlement as opposed to a judicial sale. The BAP's opinion indirectly suggested that the bankruptcy court erred by allowing abandonment before the close of the case without a showing that the stock was burdensome or of inconsequential value to the estate. But the BAP went on to affirm on the alternate ground that abandonment served an "overriding purpose" of bankruptcy—the "equality of distribution of the debtor's property among creditors similarly situated."

Before the BAP and on the instant appeal, Stark argues that the bankruptcy court's order is not an "abandonment" but a sale under 11 U.S.C. § 363. He argues that the stock could not be abandoned under 11 U.S.C. § 554(a) because it was not burdensome to the estate or of inconsequential value. Therefore, he maintains, the bankruptcy court lacked authority to order that the transfer to Moran have nunc pro tunc effect. Further, he suggests that the bankruptcy court abused its discretion in rejecting his higher bid for the stock.

Because Stark lacked standing to appeal to the BAP, however, the BAP properly declined to overturn the bankruptcy court's judgment. Stark does not show that he seeks to defend himself from direct harm to a legally protected interest so as to satisfy the standing doctrine applicable to appeals from bankruptcy courts' orders. His interests as a co-owner of Airpack, as a state court defendant, and as a frustrated bidder for the stock are not the sort of interests that support standing for the purpose of his bankruptcy appeal, and the federal appellate courts are an improper forum in which to defend those interests, which are adequately protected in state court.

A party "does not have standing to appeal a bankruptcy court order unless that party is directly and adversely affected pecuniarily by the order." *Moran v. LTV Steel Co., Inc. (In re LTV Steel Co., Inc.)*, 560 F.3d 449, 452 (6th Cir. 2009) (quotation omitted). "Only when the order directly diminishes a person's property, increases his burdens, or impairs his rights will he have standing to appeal." *Fid. Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996). This standing requirement is "more limited than Article III standing." *LTV Steel*, 560 F.3d at 452-53.

All of Stark's asserted interests are either not directly harmed by the bankruptcy court's order or are not interests that bankruptcy law—in particular the law governing abandonment—protects. Stark's ownership of some Airpack stock does not confer standing to appeal the bankruptcy court's disposition of the stock that Moran originally owned. A part owner of a corporation, without more, does not have an interest sufficient to justify intervention in (and delay of) any proceeding in which a bankruptcy court administers other shares in the corporation. Any court order in the Moran bankruptcy

proceeding would not directly affect Stark's ownership of his shares. Stark does not allege that Moran directly harmed Stark's ownership interest in his stock simply by the transfer of Moran's stock to the bankruptcy estate, and Stark does not explain how allowing the estate to transfer the stock back to Moran would harm any interest in Stark's shares that is protected by the bankruptcy law provisions relied upon by Stark.

Stark's status as a state-court defendant in a suit brought by a bankruptcy debtor is also not sufficient for standing. The interest Stark has in avoiding a state-court lawsuit, or even in affecting who has the right to bring that suit, is not the sort of interest that bankruptcy law in general is designed to protect. In the somewhat analogous situation of an order allowing a bankruptcy creditor to have derivative standing to sue, we held that the defendants of such suits are not aggrieved by such an order "when their interest in the order is as party defendants in the resulting adversary proceeding because the interest that such parties assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code." *LTV Steel*, 560 F.3d at 454 (quotation and alterations thereto omitted). The interest if anything is opposed to the primary goal of the Bankruptcy Code in general, which is to minimize the injury to creditors. *Id.* Moreover, the bankruptcy court's order does not "impair [Stark's] ability to defend [himself]" in the state court suit; "[t]hose defenses that would have been available" had the trustee brought the action on behalf of the estate, or had the trustee transferred the stock to Moran in a way free of the errors that Stark alleges, will still be available as defenses on the merits to Moran's action. *See Fid. Bank*, 77 F.3d at 883.

Stark similarly lacks bankruptcy appellate standing in his capacity as a frustrated bidder for the Airpack stock, because his interests are not aligned with those of the bankruptcy estate's creditors. Generally, "[f]rustrated bidders do not have standing to object to the sale of property." *Squire v. Scher (In re Squire)*, 282 F. App'x 413, 416 (6th Cir. 2008). An exception to this general rule may exist "where an unsuccessful bidder challenges the intrinsic structure of the sale because it is tainted by fraud, mistake, or unfairness." *Id.* But even if we read Stark's objection to the trustee's motion as alleging that the trustee somehow fraudulently or unfairly decided not to sell the stock

to Stark, Stark still does not qualify for the exception. *See id.* This is because Stark's bare interest as a potential purchaser is not protected by the Bankruptcy Code provisions that he relies upon.

A frustrated bidder lacks bankruptcy appellate standing when he merely alleges that he would have profited from his desired purchase, and does not allege, for instance, that fraud or impropriety prevented the estate from accepting his higher bid such that creditors would not receive as great a recovery as they would have had the estate accepted the higher bid. *See Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 274 (2d Cir. 1997). The Seventh Circuit's *In re Harwald Company* opinion, relied upon by our court in *Squire*, explained that to satisfy the "person aggrieved" test in the bankruptcy appellate context, a frustrated bidder must show that "the interest which he seeks to protect through his petition for review is an interest which the Bankruptcy Act seeks to protect or regulate." 497 F.2d 443, 444 (7th Cir. 1974). The Seventh Circuit noted that "the primary objective of the Bankruptcy Act is to minimize the injury to creditors arising from the fact of bankruptcy," and linked frustrated-bidder appellate standing to the creditors' interest in maximizing recovery. *Id.* at 444-45. Allowing a frustrated bidder to bring an appeal based on allegations of impropriety may make some sense when the bidder's interest in obtaining property aligns with the interests of creditors who may not be aware of the alleged wrongdoing that would limit their recovery, but allowing such an appeal does not serve the purposes of the bankruptcy proceeding when the alleged wrongdoing cannot possibly harm any creditor. Stark does not allege an injury that brings him within the interests protected by the Bankruptcy Code because even if everything he alleges about the impropriety of the bankruptcy court order is true, none of the relief he requests on appeal could possibly increase any creditor's recovery. No creditor that filed a proof of claim was left unsatisfied by the bankruptcy court's judgment. Thus, Stark lacked bankruptcy appellate standing as a frustrated bidder.

The lack of standing in this case to appeal to the BAP distinguishes our recent holding in *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re*

*Trailer Source, Inc.)*, 555 F.3d 231 (6th Cir. 2009). There we held that "the bankruptcy appellate-standing doctrine is not applicable to the second layer of appeal, from the district court to the court of appeals, when it is uncontested that the party who appealed the bankruptcy court's order to the district court had appellate standing." *Id.* at 237. Here, when Stark sought to appeal the bankruptcy court order to the BAP (the equivalent of the district court), he lacked appellate standing. The bankruptcy appellate standing doctrine thus bars Stark's appeal.

Because Stark does not have standing to appeal the order of the bankruptcy court, it is not necessary to decide whether he had standing before that court as a "party in interest," nor is it necessary to decide whether the bankruptcy court's nunc pro tunc abandonment order was improper. We remand to the BAP with instructions to dismiss the appeal for want of bankruptcy appellate standing.