RECOMMENDED FOR PUBLICATION
File Name: 25b0001p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: HUMAN HOUSING HENRIETTA HYATT, LLC,

*Debtor*.

_____

CLEARVIEW EASTERN FUND, LLC; PAULETTE LONG; CLARISSE CLEMONS-FERRARA,

*Appellants*,

*v.*

ELIZABETH Z. WOODWARD, Trustee,

*Appellee*.

Nos. 23-8025/24-8003

Appeal from the United States Bankruptcy Court
for the Western District of Kentucky at Louisville.
No. 22-bk-30060—Alan C. Stout, Bankruptcy Judge.

Argued: November 13, 2024

Decided and Filed: January 21, 2025

Before: GREGG, GUSTAFSON, and MASHBURN, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:** Peter M. Gannott, GANNOTT LAW GROUP, PLLC, Louisville, Kentucky, for Appellants. Andrew D. Stosberg, GRAY ICE HIGDON, PLLC, Louisville, Kentucky, for Appellee. **ON BRIEF:** Peter M. Gannott, GANNOTT LAW GROUP, PLLC, Louisville, Kentucky, for Appellants. Andrew D. Stosberg, GRAY ICE HIGDON, PLLC, Louisville, Kentucky, for Appellee.

—————————

## OPINION

—————————

RANDAL S. MASHBURN, Chief Bankruptcy Appellate Panel Judge.  An effort to raise an issue for the first time at the appellate level is destined for failure.  That lesson applies here, resulting in affirmance of the bankruptcy court.

A Chapter 11, Subchapter V, debtor's owners and a related, non-creditor third-party appealed orders approving the sale of the debtor's real property pursuant to a confirmed plan that allowed the plan trustee wide discretion in conducting a sale.  The owners failed to participate in the bankruptcy sale proceedings in any meaningful way.

Although the related third-party participated, it was merely as a competing bidder in the context of a private sale, with only its desire to purchase the debtor's assets arguably being impaired by the sale orders.  Therefore, it lacks standing to appeal the orders.  The third-party did make an untimely and untested allegation of having pre-existing purchase contracts for some of the properties.  To the extent the alleged contractual interest shows an impaired pecuniary interest and thus standing, the third-party did not preserve its appeal rights.

Neither the third-party nor the debtor's owners obtained a stay of the sale orders.  On appeal, appellants seek a complete reversal of the sale orders and the consummated sales.  By not obtaining a stay, appellants are limited on appeal by 11 U.S.C. § 363(m) to challenging the purchasers' good faith.  All appellants waived any such argument by not raising it during the bankruptcy court proceedings.

### PARTIES AND ISSUES ON APPEAL

Appellants are Paulette Long and Clarisse D. Clemons-Ferrara, the two members of Debtor Human Housing Henrietta Hyatt, LLC (the "Debtor"), and Clearview Eastern Fund LLC ("Clearview"), a third party interested in purchasing the Debtor's real property assets. (Ms. Long and Ms. Clemons-Ferrara are also guarantors of the secured debt owed to the

Debtor's secured lender.)   Appellee is Elizabeth Woodward, the Subchapter V Trustee upon whom the plan conveyed the authority to sell the Debtor's assets (the "Trustee").

Although the parties raised multiple issues, the Bankruptcy Appellate Panel of the Sixth Circuit (the "Panel") finds the following issues to be dispositive: whether a competing bidder in a court-approved, private sale has standing to appeal the sale as a person aggrieved; whether argument and evidence presented to the bankruptcy court after determination of a motion for reconsideration should be considered on appeal; whether 11 U.S.C. § 363(m) bars any appellate challenge other than buyers' good faith based on the facts of this case; and whether the Appellants adequately objected to the finding of good faith before the bankruptcy court and preserved the issue for appeal.  *See Gatewood v. United States*, 979 F.3d 391, 394 (6th Cir. 2020) ("[R]egardless of what issues were certified for appeal, 'we are free to affirm the district court for any reason supported by the record.'" (citation omitted)); *Baumgart v. Alam* (*In re Alam*), 359 B.R. 142, 151 (B.A.P. 6th Cir. 2006) ("We may affirm the decision of the bankruptcy court if it is correct for any reason[.]").

## FACTS

The Debtor filed this bankruptcy case under Subchapter V of Chapter 11 on January 17, 2022.  Ms. Long and Ms. Clemons-Ferrara are the member owners of the Debtor with 51% and 49% membership interests, respectively, and with Ms. Long being the Debtor's managing member.  Ms. Woodward was appointed the Subchapter V Trustee in the Debtor's bankruptcy case.

The Debtor owned nine parcels of residential real estate in Louisville, Kentucky (the "Properties"), which served as collateral for secured debt held by Toorak Repo Seller I Trust ("Toorak").  At the time of the petition filing, the Debtor valued the Properties at $863,930 in its schedules, while the debt to Toorak totaled approximately $1,112,245.  The Debtor represented that it filed bankruptcy with the goal of selling its assets to a new entity with Toorak's consent.

On February 2, 2022, Toorak moved for relief from the automatic stay to foreclose on the Properties or for adequate protection payments.  Toorak stated in its motion that the Properties had been appraised for $600,000.

The Debtor then moved on February 8, 2022, to sell the Properties free and clear of liens to Develco-Louiville, LLC ("Develco") for the total price of $700,000, without publicly marketing the Properties. The Debtor disclosed in its motion that Develco is owned by John Long, the husband of the Debtor's majority owner and managing member, Paulette Long. Thus, in court filings, the Appellant-Owners took the position that the value of the Properties was in the range of $700,000 to $863,930.

Toorak and the Debtor opposed each other's motions. On March 28, 2022, the bankruptcy court entered an agreed order between Toorak and the Debtor that resolved Toorak's motion for relief from stay and the Debtor's motion to sell the Properties. The agreed order provided that Toorak would receive $975,000 in full satisfaction of its claim, and in turn it would fully release the Debtor and all co-guarantors, which would include Ms. Long and Ms. Clemons-Ferrara. If the Debtor was unable to pay the $975,000 within the time permitted, the agreed order included terms to be incorporated in a plan.

On June 9, 2022, the Debtor filed its First Amended Plan of Liquidation, which was signed by Ms. Long as the Debtor's managing member. (First Am. Plan of Liquidation for Small Business Under Chapter 11/Debtor's Plan of Liquidation, Dated June 9, 2022 [hereinafter, the "Plan"], ECF 85.) The Plan was confirmed by the bankruptcy court on June 24, 2022. The Plan provided that Ms. Long and Ms. Clemons-Ferrara would retain 100% of the equity in Debtor, and Ms. Long would remain the Debtor's manager. As essentially the proponents of the Plan, neither Ms. Long nor Ms. Clemons-Ferrara objected to the Plan or appealed the confirmation order.

The Plan included an estimated liquidation value for the Properties of $975,000 and noted that Toorak's claim was partially secured in that amount. The Plan first provided for satisfaction of Toorak's secured claim through the sale of the Properties to Develco for $975,000, minus certain interim post-confirmation adequate protection payments. The Plan provided that if Toorak is paid $975,000, less the adequate protection payments, the Debtor and its principals, Ms. Long and Ms. Clemons-Ferrara, would be released from any and all liability to Toorak on the underlying debt and any personal guarantee. The original deadline for closing the sale (the "Develco Sale Deadline") was May 27, 2022, but it was extended by the bankruptcy court

several times at the Debtor's request. The last extension of the Develco Sale Deadline was to March 31, 2023, at which point the bankruptcy court ordered that no further extensions would be granted.

If the Develco Sale could not be completed by the Develco Sale Deadline, the Plan included a back-up provision. Under that provision, the personal guarantees of Ms. Long and Ms. Clemons-Ferrara would not be released by Toorak, and the Trustee would be empowered to assume control and sell the real property assets, i.e., the Properties. The Plan further provided as follows:

> Once in control of the Estate, the Sub V Trustee shall take such steps as necessary to secure and sell the real estate in a marketable manner. She shall, in her sole discretion, hire a broker, auctioneer, or other professional to sell off the real estate outlined in Paragraph (B) either individually or as a whole.

> Once sold, proceeds shall be first used to pay any remaining balance of administrative expenses outlined in Section 3.02 of the Plan. Thereafter, proceeds shall be paid to cover any due and owing real estate taxes or civil ordinance violations listed in Class 2 of this Plan, with the remaining balance transferred to Toorak.

(Plan § 4.01.) The back-up provision went into play when the Develco sale did not close by the extended March 31, 2023, deadline. Notably, the Plan set no minimum sale price.

Once the Trustee had sale authority, she hired a real estate broker, Howe Residential LLC ("Howe"), to assist with the listing, marketing, and sale of the Properties pursuant to listing agreements signed June 9, 2023. A few days later, the Trustee filed an application for approval of Howe's employment. The bankruptcy court approved the application, with Howe's compensation set at the rate of 6% of sale proceeds, but with the requirement that Howe apply for approval of compensation and reimbursement of expenses pursuant to 11 U.S.C. §§ 330 and 331.

The Trustee first moved to sell the property at 1601 Shelby Street to buyer Colin Drake by motion filed on August 22, 2023 (the "Drake Property"; and the "Drake Sale Motion").[1] She

---

[1]The Trustee's counsel certified to serving the Drake Sale Motion to Ms. Clemons-Ferrara and Ms. Long by mail.

stated in her motion that the buyer, Colin Drake, was identified and procured by Howe after listing the Properties for sale. The Trustee's sale agreement with Drake set the price at $85,000 and required bankruptcy court approval. Among other things, the Trustee asserted that the sale price was close to the initial listing price and the highest and best offer received by Howe; it was within her business judgment and was being conducted in good faith; and the buyer was a non-insider and independent third-party who was purchasing the property in accordance with an arms-length real estate purchase transaction under industry standards. The Trustee requested a finding that the buyer was purchasing the property in good faith and entitled to the protections of 11 U.S.C. § 363(m).

Along with the Drake Sale Motion, the Trustee filed an application for compensation for Howe related to the sale of the Drake Property. In this first application, the Trustee sought interim approval of compensation for Howe, and she attached a proposed order that would approve the compensation on an interim basis.

The hearings on the Drake Sale Motion and the first Howe compensation application were initially scheduled for August 29, 2023, but they were continued several times until November 6, 2023.

On November 1, 2023, the Trustee filed six additional motions to sell the Debtor's remaining eight Properties to Impulse LLC (the "Impulse Properties"; and the "Impulse Sale Motions").[2] These motions included all of the same provisions as the Drake Sale Motion except with respect to the identification of the property, the buyer, the price, and additional information about tax liens on each property. The motions included the same request for a finding that the buyer was purchasing the property in good faith. Although the Trustee entered into six sale agreements with Impulse for the eight properties, the agreements all provide that Impulse's offers were made as part of a portfolio of properties and the seller had to accept or reject all offers together as one.

---

[2]Counsel for the Trustee certified to service of the motions to sell the Impulse Properties to Gail Russell, counsel for Clearview, by email, and to Ms. Clemons-Ferrara and Ms. Long by mail.

In total, Impulse would pay $725,000 for the eight properties. Including the sale to Colin Drake, the Trustee proposed to sell all nine Properties for $810,000.

As with the Drake Sale Motion, the Trustee also filed an application for approval of compensation for Howe related to the sale of the Impulse Properties. In this application, filed on November 1, 2023, the Trustee did not designate the compensation as "interim."

The bankruptcy court set the Impulse Sale Motions and the second Howe compensation application for hearing on November 6, 2023, to coincide with the hearing on the Drake Sale Motion and the first Howe compensation application. The hearings were set on an expedited basis, and the bankruptcy court did not set an objection deadline.

The only party that filed a written response to the sale motions was Louisville/Jefferson County Metro Government, which did not object to the proposed sales but wanted to ensure that its liens would be paid from sale proceeds ahead of Toorak's liens. None of the Appellants filed a written objection.

**The November 6, 2023, Hearing**

The bankruptcy court conducted the hearing on November 6, 2023. The Trustee, Clearview, and Toorak, among others, appeared through counsel. Ms. Clemons-Ferrara appeared without counsel, but she informed the court she had counsel who was not present. She told the court that she had presented an offer for $825,000, by which she appears to have meant Clearview's offer, not her own, because it was later revealed that she had some connection to Clearview. She did not further participate. Counsel for Toorak informed the court of Toorak's support for the Trustee's sale motions.

The Trustee's counsel provided a summary of sale activities since the signing of the Impulse contracts on October 20, 2023. He stated there was only one contingency remaining, that of an appraisal for Impulse's financing, and that Impulse wanted to close the next week, before Thanksgiving. He said it was imperative that the sales close quickly because insurance on the Properties would soon expire, and the Trustee would have difficulty renewing it due to the

need for significant repairs.   The Trustee, who was present telephonically, confirmed the statements of her counsel.

The Trustee's counsel also informed the court that during the course of the prior month, he had been in communication with Clearview's counsel about the sale of the Properties, which Clearview's counsel confirmed.   Clearview's counsel represented that Clearview had been negotiating for the Properties and had offered a higher bid.[3]   She argued: "We would like to be assured that we are being treated the same way as this other buyer as far as the commitment about financing." (Nov. 6, 2023, Tr. 14:23-24, ECF 277.)  According to her, Clearview had been asked to provide proof that they could close right away, and she did not believe that Impulse had been asked the same.  She argued that "the fair thing to do" would be to have a stalking-horse bid, for the court to set the standard of what must be met by each bidder, and for there to be an auction with reasonable bidding increments.  (*Id.* at 15:4-9.)  She said her client could present a letter to show that "they're getting closer to their funding," but it was "not a firm commitment."[4] (*Id.* at 15:16-25.)  The Trustee's counsel explained to the court why the Trustee had not finalized an agreement with Clearview, including a lack of committed financing.

At the end of the November 6 hearing, the bankruptcy court decided to continue the hearing on the sale motions and the Howe compensation applications to November 29, 2023. The court told Clearview's counsel that "by then, [she] should know where [her] client stands," and that Clearview should have a firm financing commitment so the court could "compare apples to apples and see where we are." (*Id.* at 18:20–19:1.)

---

[3]Clearview appears to have entered the picture after the Trustee filed the Drake Sale Motion, and its offer related only to the Impulse Properties.  That distinction is not often made in the record or the briefing.  It is not material to issues determined in this appeal.

[4]During the hearing, Clearview's corporate representative, Ms. Tene Williams, who was participating telephonically, tried to speak to the court directly.  Clearview was represented by counsel, as it was required to be, and the court appropriately declined to hear argument from the representative. *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 603 (6th Cir. 2005) (affirming denial of corporate shareholder and officer's right to represent the corporation in court, "[b]ecause neither a corporate officer nor a shareholder may appear on behalf of the corporation); *Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) (In the Sixth Circuit, "a corporation cannot appear in federal court except through an attorney.").

**The November 29 Hearing**

The Appellants had an additional twenty-three days from the November 6 hearing to the November 29 hearing to inform the bankruptcy court of their interests in the Properties and fully articulate their objections to the sale motions in writing. They failed to do so.

At the November 29 hearing, the court took up the sale motions and the Howe compensation applications. Counsel for the Debtor, Trustee, Clearview, and Toorak, among others, appeared. Ms. Clemons-Ferrara was in the courtroom as the Debtor's representative, and the Trustee was also present. The Trustee's counsel informed the court that Impulse no longer had a financing contingency and that they were ready to close on or before mid-December.

With respect to Clearview's offer, the Trustee's counsel informed the court that he had received information from Clearview's counsel in the prior 24 hours that he characterized as "muddy." (Nov. 29, 2023, Tr. 8:18, ECF 230.) He said it was "nonbinding commitment letters and term sheets from an individual or an entity," with which Ms. Clemons-Ferrara appeared to be affiliated. (*Id.* at 8:20–21.) He said the term sheets were for loans totaling $858,000, but after costs and hold backs, only $434,000 would be available for funding. He read a portion of the letter to the court stating the numbers were draft estimates and the term sheet was non-binding.

Ms. Russell, counsel for Clearview, affirmatively confirmed the Trustee's counsel's description of her communication and the term sheet. She asked the court to allow Clearview's representative, Ms. Williams, to speak, but the court denied the request, stating that it would hear from counsel. Clearview's counsel then told the court that she had been informed by her client that the money was available, but that she "[had] been unable to produce [an] unconditional letter or a letter of credit or anything without conditions." (*Id.* at 11:22–23.) She also informed the court of a connection between the borrower and Ms. Clemons-Ferrara. In sum, Clearview's counsel made no express objection to the Trustee's sale motions, she just presented what she knew of Clearview's offer and financing, which she admitted was conditional.

Toorak's counsel reaffirmed Toorak's support of the sale motions and reminded the court that the Plan granted the Trustee sole discretion to sell the Properties. Finally, the Trustee and her counsel confirmed to the court that the Trustee wanted to proceed with the fully negotiated

sales to Drake and Impulse, even after recent communications with Clearview. The court indicated that it placed a great deal of weight on the business judgment of the Trustee.

Next, the court took up the Howe compensation applications. No written objection to the applications had been filed, and no party raised any objection at the hearing.

At the close of the November 29 hearing, the court orally granted all sale motions and the Howe compensation applications.

**Entry of Sale Orders and Howe Compensation Orders**

That same day, the bankruptcy court entered orders granting the applications for compensation for Howe (the "Howe Compensation Orders") and all sale motions (the "Sale Orders"). All Sale Orders include this finding by the bankruptcy court:

> The Court finds, holds and orders that the buyer under the Sale Agreement is purchasing the [Property] in good faith based on the uncontested representation by the Trustee that the buyer under the Sale Agreement is a non-insider and independent third-party who is purchasing the [Property] in accordance with an arms-length real estate purchase transaction under the provisions of an industry-standard residential real estate contract and, as such, shall be afforded the protections of Section 363(m) of the Bankruptcy Code.

(Order Granting Trustee's Motion to Sell Real Property Located at 1601 South Shelby Street . . ., ¶ 6, ECF 192; *see also* ECF 194–199, which collectively, with ECF 192, are the Sale Orders.)

**Clearview Motions for Reconsideration and Stay Pending Appeal and January 9, 2024, Hearing**

On December 10, 2023, Clearview filed a motion for the bankruptcy court to reconsider the sale motions and the Sale Orders. Clearview did not object on the basis of any impropriety with the approved sales. It merely reasserted that it had a higher bid and that its own counsel had misrepresented its financing at the November 29 hearing. Clearview argued that the mistakes of its counsel and the Trustee's counsel in describing Clearview's financing resulted in denial of due process, and that reconsideration was merited under Bankruptcy Rules 9023 and 9024 and Federal Rules 59 and 60 due to mistake, inadvertence or excusable neglect.

Clearview attached to its motion to reconsider an affidavit of Tene Williams, Clearview's CEO (the "First Williams Affidavit"). Ms. Williams stated she had provided Clearview's counsel with an updated commitment letter prior to the November 29 hearing, yet an outdated term sheet was discussed at the hearing. Ms. Williams argued that since Clearview's bid exceeded all others, the court should give Clearview the opportunity to reargue and present Clearview's correct bid and financing information. The Affidavit contained no reference to pre-existing contracts and no complaint about Drake's or Impulse's conduct.

On January 3, 2024, Clearview filed a motion for stay of the Sale Orders pending appeal.

The bankruptcy court conducted a hearing on the two motions on January 9, 2024. The Trustee's counsel represented to the court that the Impulse sales had closed. He stated the Drake sale had not yet closed, but that the parties hoped it would close that week.

New counsel for Clearview appeared at the hearing. He argued that his client wanted to keep the Properties in the family and that they had a bid for $825,000, to be paid partially with cash but mostly through finance. He did not raise any objection relating to the conduct of either buyer or refer to any pre-existing contract.

At the close of the January 9 hearing, the bankruptcy court orally denied both the motion for reconsideration and the motion for stay.

Approximately an hour after the court's oral ruling and at approximately 3:45 p.m., Clearview filed a second affidavit of Tene Williams (the "Second Williams Affidavit). Clearview had not obtained permission from the court to present this new evidence.

With the Second Williams Affidavit, Clearview for the first time claimed that it had entered into contracts with the Trustee for the purchase of some or all of the Properties, and those contracts pre-dated the Trustee's contracts with Impulse and were enforceable. At all previous times, Clearview had presented itself as having a competing offer to purchase the Properties. Clearview did not argue any facts amounting to bad faith by Drake or Impulse.

The following morning, January 10, 2024, at approximately 9:30 a.m., the bankruptcy court entered orders denying the motion for reconsideration and the motion for stay in accordance with its oral ruling.

Appellants timely appealed the Sale Orders, the Howe Compensation Orders, and the order denying Clearview's motion for reconsideration of the Sale Orders.

## JURISDICTION AND STANDARD OF REVIEW

### I.     Jurisdiction

The Panel has jurisdiction to decide this appeal.  The United States District Court for the Western District of Kentucky has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court.   28 U.S.C.  §  158(b)(6), (c)(1). Additionally, the orders on appeal are either final or the Panel grants interlocutory appeal.

A final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686 (2015)).  An order approving the sale of a debtor's assets is a final order.  *Pasley v. Keats* (*In re Pasley*), 603 B.R. 6, 8 (B.A.P. 6th Cir. 2019).  Thus, the sale orders are final and may be appealed as of right.

Appellants also appealed orders approving a commission to a real estate broker/agent. Appellee argues that one of two orders is not final because it is designated an "interim" order and the order provided that the compensation was approved on an "interim basis."  (Order Granting Appl. to Approve Interim Comp. and Reimb. of Exps for Howe Residential LLC . . . , ECF 193.)

Generally, professional fee awards are not final when additional services are expected from the professional and the interim award remains subject to further review and potential adjustment by the bankruptcy court. *Dean v. Lane* (*In re Lane*), 598 B.R. 595, 598 (B.A.P. 6th Cir. 2019) (addressing finality of interim fee award for debtor's counsel).  The circumstances for compensation of a real estate professional may vary based on whether the professional is

responsible for selling one or multiple properties and on local practice with respect to fee applications for real estate professionals.

In this case, the bankruptcy court approved the Trustee's employment of Howe to sell multiple properties. The Trustee filed the first application for compensation for Howe related to the Drake Sale, for which she requested interim approval, months before the Trustee filed her motions for approval of the sales to Impulse and the related second application for compensation for Howe. Although the Howe Compensation Orders were entered on the same day, the court entered the orders as originally proposed by the Trustee with the order approving compensation for Howe related to the Drake Sale designated as interim compensation. Notwithstanding the interim designation on the order related to the Drake Sale, both orders might be considered final upon entry of the second compensation order relating to the sale of the Impulse Properties, at which point Howe would have performed all services for which it had been retained and no further compensation applications would have been anticipated. *See id.* ("Once an applicant's role in the proceedings is at an end, the appellate court may review the award.").

To the extent the order designated as "interim" is not final, the Panel has authority to grant interlocutory appeal pursuant to 28 U.S.C. § 158(b)(3) and it so grants. *See also* Fed. R. Bankr. P. 8004(d)(1) (when a party appeals an order that is not final and does not seek leave to appeal, the Panel may treat the notice of appeal as a motion for leave and grant or deny it). The circumstances relating to the appeal of the two orders are identical, so granting an interlocutory appeal does not increase the burden on the parties or the Panel.[5]

## II.     Appellants' Standing

The Trustee argues that Clearview lacks standing, but she did not object to Ms. Long's and Ms. Clemons-Ferrara's standing. The Panel has an independent obligation to examine its

---

[5]If a nearly identical, but final, order were not also subject to this appeal, interlocutory appeal might not be granted. The factors the Panel typically considers when deciding whether to grant an interlocutory appeal would not be satisfied. *In re Lane*, 591 B.R. at 306 (B.A.P. 6th Cir. 2018) (listing factors drawn from 28 U.S.C. § 1292(b)). However, while those factors are instructive, the Panel is not constrained by them. *Simon v. Amir* (*In re Amir*), 436 B.R. 1, 8 (B.A.P. 6th Cir. 2010). Ultimately, "[t]he decision to grant leave to appeal is a discretionary one." *Cousins Props., Inc. v. Treasure Isles HC, Inc.* (*In re Treasure Isles HC, Inc.*), 462 B.R. 645, 647 (B.A.P. 6th Cir. 2011).

own jurisdiction, including appellants' standing.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 607 (1990), *cited in In re O'Donnell*, 326 B.R. 901 (B.A.P. 6th Cir. 2005).

The "person aggrieved" doctrine applies to assess standing in appeals from a bankruptcy court.  *In re Murray Energy Holdings Co.*, 624 B.R. 606, 611 (B.A.P. 6th Cir. 2021).  This doctrine examines "whether the party who appealed the bankruptcy court's order was sufficiently aggrieved by that order."  *Id.* (quoting *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 236 (6th Cir. 2009)).  The appellant must be "directly and adversely affected pecuniarily by the order."  *Stark v. Moran (In re Moran)*, 566 F.3d 676, 681 (6th Cir. 2009).  In other words, the bankruptcy court's order must "directly diminish[] a person's property, increase[] his burdens, or impair[] his rights."  *Moran*, 566 F.3d at 681 (quoting *Fid. Bank, Nat'l Ass'n v. M.M. Group, Inc.,* 77 F.3d 880, 882 (6th Cir. 1996)).**[6]**

Determining whether an appellant is a person aggrieved is a question of fact for the district court, or as applicable, the bankruptcy appellate panel.  *Fid. Bank*, 77 F.3d at 882.  The appellant asserting standing has the burden of proving that it is a "person aggrieved" by the order appealed.  *Id.*  Standing must be shown for each order on appeal.  *Carman v. Yellen*, 112 F.4th 386, 399 (6th Cir. 2024) ("Standing is assessed on a claim-by-claim basis and 'is not dispensed in gross.'" (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S. Ct. 2759 (2008) (additional citations omitted))).

### A.  Ms. Long's and Ms. Clemons-Ferrara's Standing

As the equity owners of the Debtor and personal guarantors of the Toorak debt, Ms. Long and Ms. Clemons-Ferrara have a pecuniary interest in the Sale Orders and the Howe

---

**[6]**Whether the Supreme Court's opinion in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377 (2014), affected the legitimacy of the "person aggrieved" standard in bankruptcy appeals has been debated within the Sixth Circuit.  *See*, *e.g.*, *In re Schubert*, No. 21-3969, 2023 WL 2663257, at *2–3, *4–5 (6th Cir. Mar. 28, 2023) (the author of the opinion and the author of the concurrence expressing different opinions).  However, at present, it remains the standard applied by the Sixth Circuit.  *See Cal. Palms Addiction Recovery Campus, Inc. v. Vara (In re Cal. Palms Addiction Recovery Campus, Inc.)*, 87 F.4th 734, 739 n.2 (6th Cir. 2023) (finding standing based on the appellant suffering "an adverse, pecuniary consequence" from the order on appeal (citing *Fid. Bank*, 77 F.3d at 882)).  While it remains the standard in this Circuit, the Panel applies it.  *See In re Murray Energy Holdings Co.*, 624 B.R. at 612 n.3 (recognizing that "the law in this area may be in flux," but determining that the Sixth Circuit BAP would continue to apply the "person aggrieved" doctrine because "the Sixth Circuit has not eliminated [it]").

Compensation Orders.  If the Properties were sold for a higher price, it would increase the amount of Toorak debt paid and decrease the amount for which Ms. Long and Ms. Clemons-Ferrara are personally liable on their guarantees.  Additionally, since Howe was paid from the sale proceeds, Ms. Long and Ms. Clemons-Ferrara also have an interest in reducing or eliminating the commissions paid to increase the amount of secured debt paid and reduce the deficiency they would owe under their personal guarantees.  They have standing to appeal the Sale Orders and Howe Compensation Orders, but as discussed below, they have waived their arguments on appeal.

## B.  Clearview's Standing

Clearview's standing differs as between its appeal of the Sale Orders and its appeal of the Howe Compensation Orders.

### i.      Standing to Appeal Sale Orders

Clearview is not a creditor.  Its sole interest is a desire to purchase the real property at issue in the Sale Orders.  Generally, disappointed bidders lack standing to appeal an approved sale.  *Moran*, 566 F.3d at 681–82.  An exception may exist when the bidder "challenges the intrinsic structure of the sale because it is tainted by fraud, mistake, or unfairness."  *Id.*  Even then, the disappointed bidder must also show that there is a bankruptcy interest to be served by his appeal, such as a greater return to creditors.  *Id.* at 682.

This case involves private sales by a Subchapter V trustee pursuant to a confirmed Chapter 11 plan that gave the trustee the sole discretion to determine how to sell the Properties, subject only to the requirement that the sales be "in a marketable manner."  There were no court-mandated bidding procedures pursuant to which Clearview might have bidding rights that might have been impaired by the sale process.

The Trustee argues that Clearview lacks standing because it did not argue that the structure or process of the sale was tainted by fraud, mistake, or unfairness.  The Trustee overlooks Clearview's primary complaint, which was that the sale process was unfair in not providing Clearview with a fair opportunity to bid.  However, alleged unfairness in the process is

not, by itself, sufficient for standing in a private sale context where there is no required process and there are no bidding rights. *See id.* at 681 (for person aggrieved standing, the bankruptcy court's order must diminish an appellant's property, increase its burdens, or impair its rights). In short, a potential bidder without a pecuniary interest cannot upend a sale process blessed by the bankruptcy court through a confirmed plan by subsequently claiming that a bidding process would have been better.[7]

Clearview also argues on appeal that it had prior contracts with the Trustee for the purchase of the Impulse Properties and thus an equitable interest in those Properties. It argues that its contractual rights and equitable interests were impaired by the Sale Orders. In taking that position, Clearview relies on evidence that is technically in the appellate record but that was not timely presented to the bankruptcy court during the bankruptcy proceedings, as discussed below in Discussion § I. Solely for the purpose of reviewing the standing argument to ascertain jurisdiction, the Panel has considered Clearview's argument and record evidence of prior contracts. It is disputed whether any such contracts were enforceable. Counsel for the Trustee explained why the Trustee terminated and did not pursue the Clearview contracts and why she believed Clearview had shown an inability to perform. In any event, the issue of enforceability was not presented to the bankruptcy court for determination.

To the extent Clearview had enforceable contractual rights for the purchase of some or all of the Properties, Clearview has standing to appeal the Sale Orders.

### ii.    Standing to Appeal Howe Compensation Orders

Since Clearview is not a creditor, it has no interest in the amount of commission paid to the realtor, Howe, or in how the sale proceeds are distributed. The Howe Compensation Orders do not affect any pecuniary interest of Clearview; therefore, Clearview lacks standing to appeal them.

---

[7]The Trustee also argues that Clearview's request that the bankruptcy court impose an auction sale process is precluded by the res judicata effect of the confirmed Plan, which gave the Trustee the discretion to determine the sale process with the sole qualification being that it be in a marketable manner. Because the Panel determines this appeal based on standing, mootness, and waiver, the Panel does not examine the merits of this argument.

**III.     Standard of Review**

As discussed below, the Appellants are limited on appeal to challenging the purchasers' good faith.  Because Appellants waived their appellate challenge on this issue, the Panel does not review the bankruptcy court's good faith finding.

**DISCUSSION**

The determination of this appeal rests on standing, mootness, and waiver.  Appellants are first limited in their ability to challenge the Sale Orders and the order denying their motion for reconsideration by the mootness rule codified in 11 U.S.C. § 363(m).  They also hamstrung themselves in their appeal by not first raising their objections in the bankruptcy court proceedings.

Because it potentially affects the consideration of waiver, the Panel will first address an appellate record issue.

**I.     Appellate Consideration of the Second Williams Affidavit**

Many of Appellant's arguments on appeal rely on the Second Williams Affidavit, which includes Clearview's first and only arguments and evidence of its prior contracts with the Trustee pursuant to which it asserts it would have paid $825,000 for the eight properties that were sold to Impulse for $725,000.  Clearview did not present any evidence of prior contracts with the Trustee until it filed the Second Williams Affidavit on January 9, 2024, almost an hour after the bankruptcy court had orally denied Clearview's motion to reconsider.  Clearview did not request or obtain the bankruptcy court's permission to file the affidavit, and there is no indication that the bankruptcy court considered the affidavit between 3:45 p.m. when it was filed and 9:30 a.m. the next day when the written order denying the motion to reconsider was entered.  Since the Second Williams Affidavit was not filed until after the conclusion of the bankruptcy court proceedings on the motion to reconsider the Sale Orders, it does not appear to be properly included in the appellate record.

However, the Second Williams Affidavit is technically part of the record on appeal based on the procedures set by Federal Rule of Bankruptcy Procedure 8009.  Appellants designated the

Affidavit in their record designations, and Appellee did not object to its inclusion.  According to Rule 8009(a)(4), the record "must include . . . items designated by the parties."  Any dispute about "whether the record accurately discloses what occurred in the bankruptcy court, . . . must be submitted to and settled by the bankruptcy court and the record conformed accordingly."  Fed. R. Bankr. P. 8009(e)(1); *see also Myer's Lawn Care Servs., Inc. v. Pryor*, No. 2:23-CV-3346 (NJC), 2024 WL 730496, at *3 (E.D.N.Y. Feb. 22, 2024) (holding that question of whether the bankruptcy court considered disputed items in reaching the ruling that is the subject of the appeal must be submitted to the bankruptcy court pursuant to Rule 8009(e)(1)).

Appellee did not object to the inclusion of the Second Williams Affidavit in the record on appeal until Appellants sought the Panel's permission to supplement the record with additional exhibits to the Affidavit.  The Panel denied Appellants' motion to supplement the record, but it took no action as to Appellee's argument that the Affidavit should be excluded because that request did not comply with Rule 8009(e).

The Panel's authority to alter the record is limited to "other questions as to the form and content of the record."  Fed. R. Bankr. P. 8009(e)(3).  The use of the word "other" in subsection (e)(3) excludes questions that fall within subsections (e)(1) and (e)(2).  The dispute as to the inclusion of the Second Williams Affidavit in the record falls directly within Rule 8009(e)(1), because it involves a determination of what the bankruptcy court considered.

Although the Panel lacks the authority to exclude the Second Williams Affidavit from the appellate record, the inclusion of the Affidavit does not change the Panel's waiver analysis. Issues raised for the first time in motions for reconsideration are considered waived on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  Therefore, all arguments and evidence presented for the first time in the Second Williams Affidavit are considered waived. Waiver is especially appropriate in this case given that the Affidavit was not even filed *with* the motion for reconsideration but *after* the bankruptcy court had issued its oral ruling on the motion. That is not the time to raise new arguments or submit new evidence.[8]

---

[8]To the extent Clearview claims error based on "evidence" in the Second Williams Affidavit, no error can be shown.  Even if the Affidavit had been filed with the motion for reconsideration instead of after the hearing, the

## II.    Bankruptcy Mootness and § 363(m)

A particular form of appellate mootness applies to the sale of assets in bankruptcy. "Bankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets." *In re Made in Detroit, Inc.*, 414 F.3d 576, 580 (6th Cir. 2005) (quoting *Onouli–Kona Land Co. v. Estate of Richards* (*In re Onouli–Kona Land Co.*), 846 F.2d 1170, 1171 (9th Cir. 1988)). The rule is codified in 11 U.S.C. § 363(m). *In re 255 Park Plaza Assocs. Ltd. P'ship*, 100 F.3d 1214, 1216–17 (6th Cir. 1996).

Section 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Historically, the mootness rule in § 363(m) has been "applie[d] 'regardless of the merits of legal arguments raised against' the bankruptcy court's order and functions to 'encourage participation in bankruptcy asset sales and increase the value of the property of the estate by protecting good faith purchasers from modification by an appeals court of the bargain struck with the [trustee].'" *Brown v. Ellmann* (*In re Brown*), 851 F.3d 619, 622 (6th Cir. 2017). The Sixth Circuit has clarified that the rule does not automatically moot all appeals of unstayed sale orders but applies when the party "alleging statutory mootness under § 363(m) [proves] that the

---

bankruptcy court could have appropriately disregarded it. Rule 59(e) motions are aimed at reconsideration, not initial consideration. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *see also* Fed. R. Bankr. P. 9023 (incorporating by reference Fed. R. Civ. P. 59). Any evidence submitted with a Rule 59 motion must be "newly discovered." *See Mich. Flyer LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017); *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "Newly discovered" evidence is evidence that was previously unavailable. *GenCorp, Inc.*, 178 F.3d at 834. The statements of fact and attachments to the Second Williams Affidavit relate to (i), a financing commitment letter that Williams swears was in fact available and in the hands of counsel at the November 29 hearing and (ii), Clearview's August 2024 contracts with the Trustee for the purchase of the Properties, none of which has the appearance of being previously unavailable to Clearview.

reviewing court is unable to grant effective relief without affecting the validity of the sale." *Id.* at 623.

The mootness rule codified in § 363(m) applies to all types of sales in bankruptcy. *Made in Detroit*, 414 F.3d at 581. The Sixth Circuit has explained that "[t]here is no principled reason to distinguish between sales made by trustees [pursuant to §§ 363(b) or (c)] and other sales in bankruptcy," including sales by a post-confirmation plan liquidation agent or trustee. *In re 255 Park Plaza Assocs. Ltd. P'ship*, 100 F.3d at 1217 (applying the bankruptcy mootness rule in § 363(m) to a post-confirmation auction conducted by a plan trustee according to the terms of a liquidating plan); *see also Made in Detroit*, 414 F.3d at 576 (applying § 363(m) to a sale authorized by a liquidating plan, affirming the bankruptcy court's finding that the purchaser was a "good-faith purchaser," and holding, therefore, that the sale rendered the appellants' claims moot pursuant to § 363(m)).

When the rule applies, the only reviewable issue is whether the sale was to a good faith purchaser. *Made in Detroit*, 414 F.3d at 581; *see also In re Holley*, 661 F. App'x 391, 397 (6th Cir. 2016) (holding that debtors that did not obtain a stay of the sale and did not argue that the buyer lacked good faith had "invoked no viable procedural vehicle to reverse or nullify the [sale]").

The mootness rule applies in this appeal. The bankruptcy court approved the sale of the Debtors' assets by the Trustee pursuant to the Sale Orders, and the Appellants failed to obtain a stay. The Appellants seek a full reversal of the Sale Orders and the consummated sales so that Clearview may have an opportunity to purchase the Properties. The relief they request falls squarely within the scope of the rule. *See In re Brown*, 851 F.3d at 623.

Therefore, Appellants are generally limited on appeal to challenging the bankruptcy court's finding of the purchasers' good faith. Since they failed to object to that finding when that issue was before the bankruptcy court, they did not preserve their limited appellate challenge.

**III.    Waiver of Any Challenge to the Finding of Good Faith**

Generally, an issue not raised before the bankruptcy court is waived on appeal.  *See Scottsdale Ins. Co.*, 513 F.3d at 552 (With limited exceptions, "issues not raised before the trial court are waived on appeal."); *Koenig Sporting Goods, Inc. v. Morse Road Co.* (*In re Koenig Sporting Goods, Inc.*), 229 B.R. 388, 389, n.1 (6th Cir. BAP 1999) ("Appellate courts ordinarily do not consider issues raised for the first time on appeal[, and] [a]n argument is waived that is not first presented to the bankruptcy court." (internal citations omitted)).  The Sixth Circuit has described the exceptions as follows:

> [T]he Court has discretion to entertain novel questions.  The exercise of such discretion is guided by factors such as: 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Scottsdale Ins. Co.*, 513 F.3d at 552 (quoting *In Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996) (additional citations omitted)).  No exception has been shown to apply in this case.

Courts can apply doctrines of waiver and forfeiture when evaluating § 363(m) issues.  *See Transform Holdco*, 598 U.S. at 292.  Consistent with the Sixth Circuit's general rule of waiver, courts in other jurisdictions specifically hold that a challenge to a buyer's good faith may not be raised for the first time on appeal.  *See, e.g., In re Ondova Ltd. Co.*, 620 F. App'x 290, 292 (5th Cir. 2015) ("We have indicated that a challenge to the purchaser's good-faith status itself is not mooted by sale if timely raised, but 'such a challenge may not be raised for the first time on appeal to the district court.'" (quoting *In re The Watch Ltd.*, 257 F. App'x 748, 750 (5th Cir. 2007)); *Waid v. Mission Coal Co., LLC*, No. 2:19-CV-00647-KOB, 2020 WL 705066, at *3 (N.D. Ala. Feb. 12, 2020) (finding appellants had waived any argument about good faith when they had raised it for the first time in their reply brief to their motion to stay pending appeal and not prior to the entry of the sale order); *In re Crowder*, 314 B.R. 445, 449 (B.A.P. 10th Cir. 2004) ("In order to challenge a purchaser's good faith status on appeal, a party must have first

raised the issue before the bankruptcy court."); *In re Metaldyne Corp.*, 421 B.R. 620, 625 (S.D.N.Y. 2009) (An appellant that does not raise the issue of good faith during a sale hearing may not pursue the claim on appeal.).

In this case, the Trustee included in her Sale Motions a request for a finding that the buyers would be purchasing the applicable properties in good faith and, as such, would be entitled to the protections of § 363(m). Appellants were thus on notice that the Trustee sought a finding of purchasers' good faith, and none of them contested the purchasers' good faith before the bankruptcy court.

Ms. Long did not participate at all in the bankruptcy court sale proceedings. Ms. Clemons-Ferrara only nominally participated. She appeared at one hearing without her counsel and made statements about having made an $825,000 offer, by which she appears to have meant Clearview's offer. She did not file any objection or raise any objection to the sales at a hearing, other than suggesting that she had presented a higher offer. Ms. Long and Ms. Clemons-Ferrara clearly waived any appellate challenge to the buyers' good faith by not first raising it before the bankruptcy court.

As compared to Ms. Long and Ms. Clemons-Ferrara, Clearview participated more fully in the bankruptcy proceedings, but it, too, waived any argument as to the purchasers' good faith.

### A. Standard for Good Faith

A "good faith purchaser" is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *Made in Detroit*, 414 F.3d at 581 (citation omitted). The good-faith requirement focuses on the *purchaser's* conduct with respect to the sale. *Id.* To show a lack of good faith, the appellant "must demonstrate that there was fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re 255 Park Plaza*, 100 F.3d at 1218 (internal quotation omitted)).

Clearview did not object in the bankruptcy court proceedings to any factor of the good faith finding: good faith, value, or notice of adverse claims.

**B.  Purchaser's Good Faith**

Most critically, Clearview did not raise any argument before the bankruptcy court that either purchaser, Drake or Impulse, was not acting in good faith.  Clearview's arguments were always that *the Trustee* was being unfair in not allowing it to bid and/or rejecting its offer.  The seller's conduct is not relevant except to the extent of fraud or collusion with the purchaser, neither of which were alleged.

**C.  Value**

Clearview's primary argument before the bankruptcy court was that it was willing to pay more than Impulse for the Impulse Properties and it sought a fair opportunity to bid on the Properties through a stalking-horse bid and auction procedure.  It is true that "value" is a factor in good faith, but that element does not require the absolute highest value that could conceivably be obtained, even if it was true that Clearview was willing to pay more and even if its proposal was not subject to serious financing contingencies.

Fundamentally, Clearview wanted to convert the sale process into an auction.  That effort cannot be stretched into a good faith argument for purposes of mootness.  To do so would be an impermissible extension on appeal of an argument barely alluded to before the bankruptcy court. *See In re Crowder*, 314 B.R. at 449 ("[A] mere allegation that a sale price was not sufficient is not enough to create or preserve a § 363(m) issue for appellate review.").  It is also a deficient argument.  The mere existence of a higher offer is not an indication that the accepted offer is not for value.

The Code does not define "value" for purposes of § 363(m).  Courts do not interpret the statute as requiring that the approved sale amount equal the highest value supported by the evidence or the highest offer.  Instead, the Sixth Circuit recognizes that "even 'a purchaser who pays 75 percent of the appraised value of the assets has tendered value.'" *Made in Detroit*, 414 F.3d at 583 (quoting *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 390 (2d Cir. 1997)).

Additionally, "value" need not be supported by a sale to the entity bidding the highest dollar amount. A debtor, or in this case, the Trustee, is "permitted, and in fact [is] encouraged, to evaluate other factors such as contingencies, conditions, timing, or other uncertainties" that may render a higher offer in dollar amount "less appealing." *In re Fam. Christian, LLC*, 533 B.R. 600, 622 (Bankr. W.D. Mich. 2015); *see also Midstate Fin. Co., Inc. v. Peoples*, 587 B.R. 685, 691 (E.D. Tenn. 2018) (stating that the highest offer for the property at issue does not dictate a finding of value at that amount); *In re Todd*, 194 B.R. 893, 894–95 (Bankr. D. Mont. 1996) (finding a lower offer to more accurately reflect value).

Clearview's assertion that it was willing to pay more for the properties was not adequate to preserve an appellate challenge on the issue of whether the *purchasers* were paying value for the properties. That challenge is waived.[9]

### D. Notice of Adverse Interest

The final factor in the determination of whether a buyer purchased property in good faith is whether the purchaser had notice of adverse claims. *Made in Detroit*, 414 F.3d at 581.

---

[9]Despite waiver, the Panel notes that there is substantial support in the record for the sales being for value. The bankruptcy court expressly found that purchases were "in accordance with an arms-length real estate purchase transaction under the provisions of an industry-standard residential real estate contract." (Sale Orders ¶ 6.) In other bankruptcy contexts, the price arrived at in an arm's length transaction is an indication of value. *Midstate Fin. Co., Inc.*, 587 B.R. at 691 (citations omitted) (evaluating value for purposes of 11 U.S.C. § 1325(a)(4)); *see also In re Duncan*, No. 08-8808AJM3, 2008 WL 5333561, at *2 (Bankr. S.D. Ind. Dec. 17, 2008) (stating for purposes of 11 U.S.C. § 506(d): "'Fair market value' is what a willing buyer will pay a willing seller for the property in an arms-length transaction."); *In re SunEdison, Inc.*, 575 B.R. 220, 229 (Bankr. S.D.N.Y. 2017) (for determining the value for purposes of 11 U.S.C. § 1129(b)(2)(C), finding "the best evidence of fair market value comes from the arms-length sales that the Court has approved in the course of these cases").

The historical record also includes evidence that the $810,000 total sale price approved by the bankruptcy court was good value for the properties. The Debtor, owned and controlled by Appellants Ms. Long and Ms. Clemons-Ferrara, had proposed in February 2022 to sell all the Properties to Develco for $700,000, before Toorak negotiated the price up to $975,000 for its consent to the sale. The $975,000 was for the additional consideration of a release of the personal guarantors, so it is not an equivalent comparison to the other values assigned to the Properties. After months of extensions, Develco was not able to close the sales at $975,000. When the Trustee assumed control of the Debtor's assets for sale, she hired a real estate professional who marketed the properties. Her acceptance of offers to purchase the properties for a total of $810,000 is within the mid-point of sale prices the Debtor had either proposed or ultimately agreed to in its agreed order with Toorak and its Plan. Additionally, the sales were supported by the secured creditor, Toorak, who would not be paid in full by the sales. Toorak had a strong interest in maximizing the sale price, and it supported the sales.

Clearview represented itself in the bankruptcy proceedings as a competing bidder. Having a competing bid does not constitute an "adverse interest." If it did, no winning bidder could ever be considered a good faith purchaser entitled to the protections of § 363(m). *See Schneider v. Hoyer* (*In re Alan Gable Oil Dev. Co.*), 978 F.2d 1254 (Table), 1992 WL 329419 at *5 n.3 (4th Cir. Nov. 12, 1992) ("We reject the suggestion that mere knowledge of a competing bid or a disgruntled bidder constitutes 'notice of an adverse claim' in this situation; to hold otherwise, we think, would all but eliminate the concept of good faith purchasers in the context of bankruptcy sales.").

Appellants argue that Clearview had an adverse interest by virtue of having pre-existing, enforceable contracts to purchase some or all of the Properties. As discussed above, Clearview did not timely raise any argument about pre-existing contracts in the bankruptcy sale proceedings. It first claimed to have enforceable contracts in the Second Williams Affidavit which was filed after the bankruptcy court had already made its oral ruling on Clearview's motion for reconsideration, which was too late to preserve the issue for appeal. *See Scottsdale Ins. Co.*, 513 F.3d at 553. More to the point of the issue of purchasers' good faith, Clearview never argued to the bankruptcy court that the *purchasers* had notice of its purported adverse contractual interest.

Appellants argue that Clearview provided general notice of its adverse contractual interest during the November 6 hearing. However, that statement does not accurately reflect the exchange between Clearview's counsel and the bankruptcy court at that hearing. Clearview's counsel made a passing reference to "contracts signed" in the midst of counsel describing Clearview as "interested in submitting a bid," having proposed a higher bid, and wanting the court to require a bidding process with a stalking-horse bid. (Nov. 6, 2023, Tr. 14:18–15:11.)

Clearview presented itself to the bankruptcy court as desiring a fair opportunity to bid on the Properties, not as an entity with a pre-existing, enforceable contractual right to purchase the Properties. In fact, Clearview's counsel did not dispute the Trustee's counsel's statements that the Trustee had *terminated* contracts with Clearview according to the contracts' terms because Clearview had not paid the deposit within the time required. Clearview's counsel merely asserted that the deposit had since been paid. She did not argue that the contracts were still

enforceable. This exchange is insufficient to provide Impulse, who was not shown to have been present or represented at the hearing, with notice that Clearview claimed an enforceable pre-existing right to purchase the Properties.

At the second setting of the sale hearing, November 29, 2023, the only discussion was about Clearview having presented a nonbinding financing commitment letter. In its motion for reconsideration, Clearview again referred to itself as a *bidder* with an offer of $825,000, and it claimed error in a lower bid having been mistakenly presented to the court by its counsel. Even the affidavit attached to the motion for reconsideration, the First Williams Affidavit, focused on Clearview's financing and stated that Clearview had presented a "bid for the entire portfolio [that] exceeded all other bids." (Buyer, Clear View Eastern Fund, LLC's Motion (First), to Reargue and Reconsider Trustee's Motion to Sell All Designated Real Property of the Debtor . . .; Ex. B Affidavit of Tene Williams, 3, ¶ 7, ECF 216-2.)[10]

The mere mention of "contracts signed" in the midst of a broader and primary request by Clearview of a fair opportunity to *bid* did not put the issues of whether Clearview had an adverse interest and whether the purchasers were purchasing in good faith before the bankruptcy court. These undeveloped issues are waived on appeal. *See United States v. Christian*, 64 F.3d 663, 1995 WL 496644 at *1 (6th Cir. 1995) (Issues not raised and fully developed before the trial court are waived on appeal.).

### E. Conclusion

In sum, Clearview presented itself to the bankruptcy court as a competing bidder. It never expressly objected to the Trustee's request that Impulse and Drake be found to be good faith purchasers. Clearview's mere assertion of having a higher bid and timely but vague references to contracts that had been terminated did not present a fully developed argument before the bankruptcy court that Impulse and Drake were not purchasing in good faith. Therefore, Clearview's appellate challenge to the good faith finding was waived.

---

[10]The only time Clearview argued that it had enforceable contractual rights was in the Second Williams Affidavit, submitted an hour after the bankruptcy court had orally denied Clearview's motion for reconsideration. As previously discussed, this untimely argument is considered waived.

**IV.      Waiver of Any Challenge to the Howe Compensation Orders**

None of the Appellants objected to the applications for compensation for the real estate broker, Howe.  By not objecting, they waived any challenge to the Howe Compensation Orders on appeal.

**CONCLUSION**

Since Appellants seek to reverse on appeal orders approving the sale of the Debtor's assets, for which they did not obtain a stay, they are limited on appeal to challenging the bankruptcy court's determination of purchasers' good faith.  By not raising any argument as to the purchasers' good faith before the bankruptcy court, Appellants have waived any right to assert such arguments on appeal.  With no reviewable issue on appeal, the Sale Orders are affirmed.  Likewise, the order denying the motion for reconsideration of the Sale Orders is affirmed.

Similarly, the Appellants waived any challenge to the Howe Compensation Orders by not objecting to the relief requested in the bankruptcy court proceedings.  The Howe Compensation Orders are also affirmed.